**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

KEVIN KEITH,

          Plaintiff,

   -vs-

G. MICHELE YEZZO, *et al.*,

          Defendants.

Case No. 1:18-CV-00047

JUDGE OLIVER

**REPLY IN SUPPORT OF DEFENDANTS MICHAEL CORWIN, CITY OF BUCYRUS, AND CITY OF BUCYRUS POLICE DEPARTMENT'S MOTION TO DISMISS**

**I.**    ***Heck* Bars Plaintiff's § 1983 Claims Because the Claims Necessarily Imply the Invalidity of his Conviction.**

*Habeas corpus* -- and not 42 U.S.C. § 1983 -- is the exclusive federal remedy for state prisoners challenging their conviction and confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 487-90, (1973). "[A] prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quoting *Preiser*, 411 U.S. at 489). Yet Plaintiff seeks to do precisely that (his assertions to the contrary notwithstanding). Plaintiff points to his conviction and confinement as the "direct and proximate result" of the actions he alleges to be constitutionally improper under § 1983. (Comp't, ¶ 156). Plaintiff must, by necessity, implicate the lawfulness of the state's custody in order to show the "actual injury" that is required for constitutional standing for his Section 1983 claims.

In *Heck v. Humphrey*, the U.S. Supreme Court extended "the hoary principle that civil tort actions are **not appropriate vehicles** for challenging the validity of outstanding criminal judgments" to Section 1983 claims that "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." 512 U.S. 477, 486 (1994) (emphasis added).

1

"*Heck* makes clear that no cause of action exists [under Section 1983] until a conviction is legally eliminated." *Schilling v. White*, 58 F.3d 1081, 1087 (6th Cir. 1995). "[U]nless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus," a prisoner cannot maintain Section 1983 claims that "**necessarily imply** the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 478, 489 (emphasis added).

Plaintiff is a prisoner in state custody. He cannot satisfy the "favorable termination" requirement to avoid the "*Heck* bar" to his Section 1983 claims, because his conviction stills stands. This relegates Plaintiff to the alternative argument that his two claims – (1) denial of access to the courts by suppression of evidence, destruction of evidence, and ignorance of a subpoena, and (2) violation of his rights to due process, fair trial, and confrontation – somehow do not "*necessarily imply*" the invalidity of his conviction and confinement.

Plaintiff's opposition to Defendants' *Heck* argument hangs – and fails – on the word "necessarily." *See Hill v. Snyder*, 878 F.3d 193, 207 (6th Cir. 2017). Plaintiff asserts that a "meritorious determination of Keith's claims would not 'necessarily' render his conviction invalid." (Doc # 27, PageID #439). Plaintiff's claims are, however, necessarily barred under *Heck*. All of his claims -- whether directed at pre-trial or post-trial conduct -- "hinge on factual proof that would call into question the validity of an order directing his confinement." *Borum v. Williams*, W.D.Tenn. No. 14-2718, 2015 U.S. Dist. LEXIS 6452, *9-10 (Jan. 21, 2015).

    **A.**    **Plaintiff's "Access to Courts" Claim is a Smokescreen for *Brady* and *Youngblood* Claims Barred by *Heck*.**

Plaintiff frames his first cause of action as the denial of a meaningful opportunity to litigate, i.e. an access-to-courts claim. (Doc #27, PageID #442). His pleading strategy -- a reframing of the same issues he has failed to establish on direct appeal and in his *habeas* petitions -- is ultimately unhelpful to Plaintiff. An "access-to-courts" claim that is related to a

prisoner's conviction "necessarily implies" the invalidity of that conviction and is barred by the *Heck* doctrine. *Hatcher v. Simcox*, No. 2:17-cv-69, 2017 U.S. Dist. LEXIS 185659, *4-6 (E.D. Tenn. Nov, 9, 2017).

Plaintiff's opposition fails to even address, let alone distinguish, *Hatcher*. Nor does Plaintiff refute the clear weight of authority from other courts which have concluded that similar prisoner "access-to-courts" claims are barred by *Heck*. *See e.g., Coulston v. Houtzdale*, 651 Fed. Appx. 139, 142 (3rd Cir. 2016) (*Heck* bars prisoner's access-to-courts claim because establishing injury would necessarily imply the invalidity of the conviction); *Moore v. Wheeler*, 520 Fed. Appx. 927 (11th Cir. 2013) (same); *Hoard v. Reddy*, 175 F.3d 531, 534 (7th Cir. 1999) ("where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated"); *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 442 (3rd Cir. 2005) *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181 (3rd Cir. 2010). ("When a denial of access claim involves a state's suppression of evidence that is material to a criminal trial, the claim does not accrue until the conviction is invalidated"); *Burd v. Sessler*, 702 F.3d 429, 430 (7th Cir. 2012) (*Heck* barred § 1983 action where a favorable judgment would necessarily call into question the validity of the conviction or sentence, and plaintiff could have pursued collateral relief but failed to timely do so); *Pineda v. Nevada Dept. of Prisons*, 459 Fed. Appx. 675, 675 (9th Cir. 2011) (access-to-courts claims barred by *Heck* because success of these claims necessarily implies the invalidity of conviction or sentence).

Instead, Plaintiff cites several cases for the general proposition that an "access-to-courts" claim is actionable under Section 1983 (Doc. #27, PageID #442-443). This misses the mark. *Heck* is a bar to *otherwise actionable* Section 1983 claims, because a prisoner is seeking to

3

circumvent the proper channel for challenging a conviction and/or confinement: *habeas corpus*.

Plaintiff also relies on a line of cases from courts in the Ninth Circuit which espouse an extreme minority view of prisoner "access to courts" claims under Section 1983. Plaintiff's lead case is a Magistrate Judge's opinion from California, *Sprinkle v. Robinson,* which itself acknowledges that the majority of U.S. Courts reject "access to courts" claims pursuant to *Heck*. *Sprinkle v. Robinson*, E.D. Cal. No. 2:02-cv-1563, 2017 U.S. Dist. LEXIS 41837, *15 (Mar. 22, 2017). Since the injury in question in such claims is "losing the underlying case," *Heck* applies until the underlying conviction has been invalidated. *Id*. (quoting *Nance v. Vieregge*, 147 F.3d 589 (7th Cir. 1998)). Plaintiff cites to another Magistrate Judge's opinion in *Canales-Robles v. Peters*, 270 F. Supp. 3d 1230 (D. Or. 2017), and to a district court judge's opinion in *Arrellano v. Blahnik*, S.D.Cal. No. 16-cv-2412, 2017 U.S. Dist. LEXIS 131719 (Aug. 17, 2017), both of whom approved the extreme minority view of *Sprinkle*. Courts in this Circuit, however, follow the majority approach. *See e.g.*, *Ray v. Hogg*, E.D. Mich. No. 05-73910, 2007 U.S. Dist. LEXIS 68806, *14 (Sep. 18, 2007) (following *Nance* and its progeny); *Brown v. Johns*, W.D. Mich. No. 2:05-cv-43, 2007 U.S. Dist. LEXIS 60135, *10 (Aug. 16, 2007) (same).

To prove his "access to courts" claim, Plaintiff acknowledges that he must show a non-frivolous underlying claim. *See Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). Plaintiff concedes that the substance of this Section 1983 claim properly sounds in *Brady* and *Youngblood* (Doc #27, PageID #444). In order to prevail on the "access to courts" claim, he must prove that his underlying *Brady* and *Youngblood* claims are meritorious, a finding that would necessarily imply the invalidity of his conviction. Both *Brady* (suppressed evidence) and *Youngblood* (destroyed evidence) claims are *Heck*-barred. S*ee Allen v. Clark*, No. 1:13-cv-326, 2014 U.S. Dist. LEXIS 90807 (S.D. Ohio July 3, 2014) (Section 1983 claim premised on failure

4

to preserve evidence barred by *Heck*); *Lawrence v. Strode*, No. 1:14-cv-P79, 2014 U.S. Dist. LEXIS 141766, *810-11 (W.D. Ky. Oct. 6, 2014) (dismissing pursuant to *Heck* and citing *Allen* with approval) (collecting cases); *Skinner*, 562 U.S. at 536 (*Brady* claims are *Heck* barred). *See also Griffin v. Balt. Police Dept.*, 804 F.3d 692, 695-96 (4th Cir. 2015) (finding that § 1983 claim predicated on alleged *Brady* violations would, if proven, "necessarily undermine the validity of Griffin's prior convictions" and thus fell "within the core of the *Heck* bar").

Plaintiff seeks to avoid *Heck* by summarizing his allegations in two numbered lists (Paged ID #439-40) and then falsely asserting that the "majority" of these allegations involved post-trial conduct that falls outside the technical parameters of *Brady*. However, only three of the eleven numbered items appear to be exclusively post-trial allegations. The "majority" of the allegations involve the alleged suppression and destruction of evidence, the ignorance of a defense subpoena, and issues related to Defendant Yezzo's involvement in Plaintiff's trial. These issues sound in *Brady* and *Youngblood*, and any finding that Defendants' conduct rose to a level of a constitutional violation would necessarily imply the unlawfulness of his conviction.

Plaintiff appeals to the Supreme Court's decision in *Skinner* to salvage his *Heck*-barred claims about Defendants' pre-trial conduct, but that reliance is misplaced. In *Skinner*, the Court held that a post-conviction claim for DNA testing was proper under § 1983 because DNA testing <u>could be</u> exculpatory, inculpatory, or inconclusive – i.e., it did not *necessarily imply* that the conviction was invalid. The *Skinner* Court distinguished DNA evidence from *Brady* evidence:

> Unlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a *Brady* claim, when successful postconviction, **necessarily yields evidence undermining a conviction**: *Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment. See *Strickler*, 527 U.S., at 296.
>
> Accordingly, ***Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983**.

5

*Skinner v. Switzer*, 562 U.S. 521, 536 (2011) (emphasis added). Plaintiff's cautious avoidance of the terms "*Brady*" and "*Youngblood*" in his complaint, and the reframing of his *Brady* and *Youngblood* claims as spokes in a comprehensive "access to courts" wheel, fails to shield his complaint from *Heck*'s clear prohibition of collateral attacks on a prisoner's conviction.

Plaintiff's second cause of action – for due process, fair trial, and confrontation – fares no better than his "access-to-courts" claim. With regard to Defendants Bucyrus, Bucyrus Police Department, and Michael Corwin, Plaintiff challenges the pre-trial investigative practices and "failure to act" to disavow Defendant Yezzo's involvement in the case (Comp't, ¶¶173-74). Plaintiff has cited to no cases holding that this conduct constitutes constitutional violations. Moreover, assuming *arguendo* that Plaintiff succeeded on the merits of his second cause of action, proving these violations would necessarily implicate the evidence relied on in Plaintiff's trial and conviction. A successful Section 1983 claim would "necessarily imply" that he was unlawfully convicted, because his conviction was obtained based on Defendants' investigative practices and reliance on Defendant Yezzo – the same conduct challenged in this suit.

Until and unless Plaintiff's conviction is overturned through direct appeal, *habeas corpus*, or otherwise, *Heck* prohibits Plaintiff from pursuing his claims under Section 1983.

## II.   Plaintiff did not Allege a "Final Policymaker" *Monell* Claim.

Local governments are not vicariously liable under Section 1983 for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). The Supreme Court rejected *respondeat superior* liability in *Monell*, reasoning that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 671 (1978).

Plaintiff readily concedes in his opposition that his complaint is facially defective: his

*Monell* claims against Defendants City of Bucyrus and City of Bucyrus Police Department[1] are not premised on the existence of any "municipal custom or policy" that caused the alleged deprivation of constitutional rights. (Doc. #27, PageID #460).

Plaintiff attempts to reframe his claims under a theory of "municipal policymaker liability," based on the Supreme Court's plurality opinion in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). The Court has "assumed that an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) (citing *Owen v. City of Independence*, 445 U. S. 622 (1980); *Newport v. Fact Concerts, Inc.*, 453 U. S. 247, 256 (1981); and *Pembaur*). However, Plaintiff's complaint is devoid of any competent allegations to support such a *Monell* claim.

In *Pembaur*, the Court "undertook to define more precisely when a decision on a single occasion may be enough to establish an unconstitutional municipal policy," but it did not settle on a general formulation. *Praprotnik*, 485 U.S. at 123. The plurality opinion in *Pembaur* provides several guiding principles that are relevant here. A majority of the Court agreed that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Further, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Although *Pembaur* opened the door for the policymaker theory on which Plaintiff relies, the Court made clear that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Id.* at 482.

---

[1] The City of Bucyrus Police Department is not a property party to Plaintiff's *Monell* claim. It is well settled that municipal police departments are not entities subject to suit, because they are merely departments of city government. *See, e.g., Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007). Therefore, the Bucyrus Police Department is not a proper defendant.

Plaintiff's *Monell* claim fails because he has not alleged that then-Captain Corwin was a final policymaker, nor has he alleged that the City or the Police Department ordered or sanctioned the allegedly unconstitutional conduct of Defendant Corwin. The Complaint is silent as to municipal liability under a final policymaker theory. *See Teets v. Cuyahoga Cty.*, 460 Fed. Appx. 498, 504 (6th Cir. 2012).

Plaintiff's attempts to buttress his defective complaint are unavailing. Plaintiff makes a conclusory assertion that Captain Corwin was a "decisionmaker [who] possesse[d] final authority to establish municipal policy," but Plaintiff cites neither to apposite case law nor to any averments in his complaint to support that contention. The bar for "policymaker" status is high in the Sixth Circuit. "[A]n official is a 'policymaker' only when state or local law vests in him the 'authority to establish municipal policy with respect to the action ordered,' and such authority is 'final.'" *Jorg v. City of Cincinnati*, 145 Fed. Appx. 143, 146 (6th Cir. 2005); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). Neither the law nor the facts support Plaintiff's attempt to splice the *Pembaur* theory into the Complaint as an afterthought.

Plaintiff also attempts to cure the deficiencies by reciting new facts in his opposition – namely, citations to the trial transcript in his criminal case. (Doc. #27, PageID #461). Plaintiff points to then-Captain Corwin's status as lead detective and as a Division Commander, but neither of those job assignments establishes as a matter of Ohio law that Corwin was vested with "final policymaking" authority vis-à-vis Police Department investigations, responses to subpoenas, etc. Nor does his presence at the prosecution table as the department designee during the trial establish such authority. None of these points are averred in the Complaint. Plaintiff never alleged facts to show that Defendant Corwin was a "final policymaker."

Plaintiff also fails to make the requisite link between Defendant Corwin's actions and his alleged deprivation of court access. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Plaintiff makes no effort to establish such a link in his Complaint, or his opposition; instead he seemingly concedes that he has failed to allege this claim, and asks in a footnote for leave to amend. (Doc. #27, PageID# 461, fn.7). For the reasons discussed herein, any such amendment would be futile.

### III. Plaintiff Cannot Overcome Qualified Immunity, Because No Case Law "Clearly Established" That Captain Corwin's Alleged Conduct Was Unconstitutional

Plaintiff does not present a single case to show that it was "clearly established" that Captain Corwin's handwritten note on a facsimile to the crime lab rises to the level of a constitutional violation. Plaintiff does not present a single case to show that Captain Corwin was deliberately indifferent in failing to bring Ms. Yezzo's purported change of opinion to light. Plaintiff makes only a generalized appeal to cases involving the "constitutional right to access the courts." (Doc #27, PageID #466). Plaintiff relies on *Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003) and *Wheatt v. City of E. Cleveland*, N.D. Ohio No. 1:17-CV-377, 2017 U.S. Dist. LEXIS 186224 (Nov. 9, 2017), but both deal more generally with the right of access-to-courts and with allegations of a cover-up. Assuming that these cases "clearly establish" that a police officer's denial of "access-to-courts" is a constitutional violation, neither case establishes that Captain Corwin's specific conduct was clearly established as a form of denial of "access-to-courts." Further, neither case backdates the "clearly established" nature of an access-to-courts violation to the time of Captain Corwin's alleged unconstitutional actions around the time of

9

Plaintiff's trial in 1994. *See Wheatt*, 2017 U.S. Dist. LEXIS 186224, *24 (finding that the Plaintiff's right to access the courts (albeit in the context of a cover-up) was clearly established in 1997 with the Sixth Circuit's decision in *Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997)). Even assuming arguendo that Plaintiff set forth a constitutional violation against Captain Corwin, it most certainly was not "clearly established" at the time of the alleged violation. The cases relied upon by Plaintiff were issued long after this time.

**IV. Conclusion.**

For the foregoing reasons, and for those set forth in Defendants' Motion to Dismiss, Plaintiff's claims against Defendants Michael Corwin, the City of Bucyrus, and the City of Bucyrus Police Department should be dismissed in their entirety.

Respectfully Submitted,

*s/ Drew C. Piersall*

Drew C. Piersall (#0078085) dcp@zrlaw.com
Ami Patel (#0078201) ajp@zrlaw.com
Zashin & Rich Co., L.P.A.
17 South High Street, Suite 900
Columbus, Ohio 43215
Telephone: (614) 224-4411
Facsimile: (614) 224-4433

Robert A. Ratliff (#0068491)
lawdir@cityofbucyrusoh.us
Law Director, City of Bucyrus
500 S. Sandusky Ave.
Bucyrus, Ohio 44820
Telephone: (419) 562-6767

*Attorneys for Defendants Michael Corwin, City of Bucyrus, and Bucyrus Police Department*

## CERTIFICATE OF SERVICE

This will certify that the foregoing was filed electronically on May 25, 2018. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Drew C. Piersall*

Drew C. Piersall (#0078085)
Zashin & Rich Co., L.P.A.

*One of the Attorneys for Defendants*