# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Kevin Keith, | : | Case No. 1:18-cv-00047 |
| | : | |
| Plaintiff, | : | Judge Solomon Oliver, Jr. |
| | : | |
| v. | : | |
| | : | |
| G. Michele Yezzo, et. al., | : | |
| | : | |
| Defendants. | : | |

---

**Plaintiff's Response in Opposition to G. Michele Yezzo's Motion to Dismiss**

---

Respectfully Submitted,

/s/ James R. Wooley
/s/ Calland M. Ferraro
James R. Wooley (003850)
Calland M. Ferraro (0093439)
Jones Day – Cleveland
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-7345
jrwooley@JonesDay.com
cferraro@JonesDay.com

/s/ Zachary M. Swisher
Zachary M. Swisher (0076288)
Sybert, Rhoad, Lackey Swisher, LLC
153 South Liberty Street
Powell, Ohio 43065
(614) 785-1811
zach@law153group.com

/s/ Rachel Troutman
Rachel Troutman (0076741)

Supervising Attorney, Death Penalty Dept
Office of the Ohio Public Defender
250 E. Broad Street, Suite 1400
Columbus, Ohio 43215
Rachel.Troutman@OPD.ohio.gov

/s/ James M. Petro
James M. Petro (0022096)
Attorney-at-Law
6573 Marissa Loop #405
Naples, FL 34108
Jimpetro73@gmail.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................... ii

**CERTIFICATION OF TRACK** ................................................................................... 1

**BRIEF STATEMENT OF THE ISSUES TO BE DECIDED** .................................... 1

**SUMMARY OF THE ARGUMENT** ............................................................................ 1

I.     INTRODUCTION AND OVERVIEW ................................................................... 2

II.    STANDARD OF REVIEW ..................................................................................... 8

III.   ARGUMENT ............................................................................................................ 8

     A.     Keith's Claims are Timely. ........................................................................ 8

     B.     Keith Has Stated a Plausible Access-to-Courts Claim Against Yezzo ..... 9

     C.     *Heck v. Humphrey* Does Not Bar Keith's Claims. ................................... 13

     D.     Yezzo is Not Entitled to Immunity ........................................................... 15

**CONCLUSION** ............................................................................................................ 19

**CERTIFICATE OF SERVICE** ................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Arrellano v. Blahnik*, 2017 WL 3530896 (S.D. Cal. Aug. 17, 2017)....................................14

*Barksdale v. City of Cleveland*, 2006 WL 7077216 (N.D. Ohio May 5, 2006) .....................9

*Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) ....................................................13

*Briscoe v. LaHue*, 460 U.S. 325 (1983) ................................................................................16

*Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) ...........................................................9

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).......................................................................16

*Burkett v. Thaler*, 2010 U.S. Dist. LEXIS 83905 (S.D. Tex. Aug. 16, 2010).......................4

*Canales-Robles v. Peters*, 270 F. Supp. 3d 1230 (D. Or. 2017) ...........................................14

*Christopher v. Harbury*, 536 U.S. 403 (2002) ...............................................................10, 12

*Davis v. Commonwealth*, 147 S.W.3d 709 (Ky. 2004) ...........................................................4

*Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949 (6th Cir. 2014) ......................................2

*Fears v. Kasich*, 845 F.3d 231 (6th Cir. 2016).....................................................................12

*Fitts v. Sicker*, 232 F. App'x 436 (6th Cir. 2007).........................................................10, 12

*Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013) .....................................................9, 10

*Frankenfield v. State*, 2008 Tex. App. LEXIS 7920 (Tex. App. Oct. 16, 2008)....................4

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ......................................15, 16, 17

*Harrington v. Richter*, 562 U.S. 86 (2011) ............................................................................6

*Heck v. Humphrey*, 512. U.S. 477 (1994) ...........................................................1, 13, 14, 15

*Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2002)...............................................................17

*In re Cincinnati Radiation Litig.*, 874 F. Supp. 796 (S.D. Ohio 1995).............................9, 10

*Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649 (1st Cir. 1997) ....................................12

*Keith v. Mitchell*, Case No 1:99-cv-657 .................................................................................2

*Keith v. LaRose*, 2014 U.S. Dist. LEXIS 42121 (N.D. Ohio Feb. 6, 2014) ...........................6

*Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516 (6th Cir. 1997).......................................8

*Layton v. Johnson*, 2001 U.S. Dist. LEXIS 13976 (N.D. Tex. Sep. 6, 2001) .........................4

*Lewis v. Casey*, 518 U.S. 343 (1996) .............................................................................10, 12

*Martin v. City of Broadview Hts.*, 712 F.3d 951 (6th Cir. 2013) ...........................................15

*Martinez v. Ryan*, 566 U.S. 1 (2012)......................................................................................6

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) ...............................12, 15, 16, 17

*Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp. 2d 912 (N.D. Ohio 2011) ......2

*People v. Cunningham*, 773 N.E.2d 682 (Ill. App. Ct. 2002) .................................................4

*People v. Kraybill*, 14 N.E.3d 1131 (Ill. App. Ct. 2014).........................................................4

*People v. Sutherland*, 860 N.E.2d 178 (Ill. 2006) .................................................................4

*Rodriguez v. City of Cleveland*, 439 Fed. App'x 433 (6th Cir. 2011)...................................18

*Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005) .........................................................................13

*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983) ..................................................................13

*Sprinkle v. Robinson*, 2017 WL 1079833 (E.D. Cal. Mar. 22, 2017) ...................................14

*Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999) ...............................................16, 17, 18

*Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003) ......................................................10, 11

*State v. Jones*, 681 S.E.2d 580 (S.C. 2009) ...........................................................................4

*State v. Keith*, 79 Ohio St. 3d 514 (1997)...............................................................................4

*State v. Smith*, 807 A.2d 500 (Conn. App. Ct. 2002) .............................................................4

*State v. Williams*, 1991 Ohio App. LEXIS 3883 (Ohio Ct. App. Aug. 16, 1991)...................4

*Stemler v. Florence*, 126 F.3d 856 (6th Cir. 1997) ...............................................................15

*Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997) .......................10, 12, 13

*Trevino v. Thaler*, 569 U.S. 413 (2013) .................................................................................6

*Wheatt v. City of E. Cleveland*, 2017 WL 5187780 (N.D. Ohio Nov. 9, 2017)..............13, 15

## CONSTITUTIONAL PROVISIONS

28 U.S. Const. § 2244.............................................................................................................6

## RULES

Federal Rules of Civil Procedure 12 .......................................................................................1

## CERTIFICATION OF TRACK

This case has not currently been assigned to a track.  Local Rule 7.1(f) instructs that memoranda in unassigned cases must not exceed 20 pages.  Keith has complied with the page limitations.

## BRIEF STATEMENT OF THE ISSUES TO BE DECIDED

The issues before this Court concern: (1) whether the Plaintiff's § 1983 claims are barred by the doctrine announced in *Heck v. Humphrey*, 512. U.S. 477 (1994); (2) whether the Plaintiff's § 1983 claim concerning the violation of his right-of-access-to-the-courts survives the Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1); and (3) whether the Defendant is entitled to immunity.

## SUMMARY OF THE ARGUMENT

The right of access to the courts is a fundamental right protected by the Constitution, and the Defendant Yezzo has violated Keith's right.    Because success on the merits of Keith's § 1983 claims would not "necessarily demonstrate the invalidity of" his conviction, Keith's claims are not barred by the *Heck* doctrine.

The Defendant concealed information crucial to Keith's case, and her concealment and subsequent actions have frustrated his ability to obtain redress through the courts.  By providing patently erroneous conclusions, Yezzo covered up the truth.  Keith did not learn of this until recently.  Keith's complaint and exhibits contain sufficient factual matter to state a plausible access-to-courts claim against Yezzo, who is not entitled to immunity for her actions. Keith more than meets his burden.

1

## I.    INTRODUCTION AND OVERVIEW

Defendant G. Michele Yezzo engaged in deliberate deception during Kevin Keith's 1994 trial, creating a link between Keith and the crime scene that does not exist.  She now seeks to avoid responsibility for those actions, maintaining that Keith's complaint "generally point[s] to Yezzo's work/personnel file while simultaneously questioning, without much detail, the veracity of her testimony."  Doc. 32, PageID 510.  To the contrary, Keith's complaint and the attached exhibits,[1] demonstrate that Yezzo's conclusions were faulty, not based in science, and apparently rendered as a result of her willingness to "stretch the truth to satisfy a department."  Doc. 1-11, PageID 134.

Yezzo downplays her testimony against Keith, stating that she merely testified that the "spacing and orientation of the license plate impression were similar to the car of Plaintiff's girlfriend."  Doc. 32, PageID 498.  But she cannot escape the fact that her work was vital to an otherwise weak criminal case against Keith.

The police impounded Keith's girlfriend's grandfather's blue/green Oldsmobile Omega, (hereinafter referred to as "Omega"), license plate "MVR043," to be searched for evidence linking it to the crime scene and to compare its tires to the tire impressions in the snow at the scene.  *See* Trial Transcript pages 530-31, Trial Deposition Testimony, pages 17-20, attached as Exhibit A-1 and A-2.[2]  To the police's dismay, the tread of the tires on the car did not match the

---

[1]In deciding a motion to dismiss, "a court may look beyond the allegations contained in the complaint to exhibits attached to or otherwise incorporated in the complaint."  *Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp. 2d 912, 917 (N.D. Ohio 2011) (Oliver, J.).
[2]We have attached these portions of the trial proceedings as Exhibit A for the court's convenience, because they are not available electronically.  *See Keith v. Mitchell*, Case No 1:99-cv-657, dkt. 29-33.  The transcript is a public record, so it can be considered on a motion to dismiss even though it was not attached to the Complaint.  *See Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 952 (6th Cir. 2014) ("Matters of public record may be considered on a motion to dismiss" even if the documents were "not attached to the pleadings").

impressions, and there were no fibers, glass, or other evidence that connected the Omega to the scene or to Keith.[3] Ex. 1-B, Dep. Tr. 17-20. The tires that were on the Omega, however, were not the tires that Keith's girlfriend's grandfather had purchased for the car the summer prior. The police apparently assumed the change in tires was done by Keith to avoid being linked to the scene.

On March 9, 1994, Defendant Michael Corwin faxed Yezzo a receipt for the type of tires purchased by the grandfather the previous year, and he also sent her a brochure picture of the tires. Doc. 1-3, PageID 46-50. Corwin specifically pointed out to her which tire picture in the brochure was the tire previously put on the car. *Id.* at. 48-9. He wrote a note to Yezzo, dated March 11, 1994, that he "hope[d] this will do the trick for us." *Id.* at 50.

Five days later, Yezzo rendered her conclusion—based upon the brochure pictures of tires—that the tires formerly on the Omega were similar in tread design to the tire tracks. In her testimony, Yezzo explained her conclusion of "similar in tread design" in a way that implied the tire track impression she examined was indeed a *match* with the tire tread from the brochure. She testified that "the portion of the tread design present and sufficiently registered for the examination **is the same** as the tire, Triumph 2000." Ex. A-2, Dep. Tr. 24 (emphasis added). She went on to explain that she used the term "similar" only "for the sake of . . . conservatism." *Id.* at 25. She clarified that "it's [sic] similarity is it **would have** originated from the Triumph 2000." *Id.* (emphasis added). If there is any doubt whether her audience understood her clear implication, one need only to look at the opinion of the Supreme Court of Ohio: "Although the cast taken of the tire tread at the crime scene did not match tires found on the Oldsmobile Omega

---

[3] There is no evidence Keith was ever even inside the car, much less that he used it to commit this crime.

one month later, the cast did match the tread of the tires purchased by Alton Davison as shown on the tire's sales brochures."  *State v. Keith*, 79 Ohio St. 3d 514, 517 (1997).

Yezzo also testified that she "was able to identify the numbers '043' in the region of the license plate area." Ex. A-2, Dep. Tr. 13.  In her report, she stated that the impression had "spacing and orientation similar to the license plate 'MVR043.'"  Ex. A-3, State's Trial Exhibit 1.  Keith was convicted on this evidence.

Keith thereafter retained independent expert William Bodziak who, in 2010, reviewed the State's evidence and evaluated Yezzo's conclusions.  Complaint, ¶¶ 102–10, Ex. 19.  Bodziak is a retired FBI Special Agent and an expert witness who provides testimony throughout the country (usually on behalf of the government) concerning footwear and tire tread impressions.[4]  He is described by prosecutors as an "internationally renowned" and a "world class" expert in impression evidence.[5]  He even trains BCI analysts.  Ex. 20.

Bodziak's findings are contrary to Yezzo's, and he also questioned how she could have reached her conclusions.  Concerning the license plate, Bodziak defined what the term "similar" actually means: "The forensic use of the word 'similar' has no further meaning than it would for a layman in that it can only attest to a visual likeness of sorts and does not include the tread dimension.  It is noted that the Firestone Triumph 2000 tire design was made in many sizes both

---

[4] *See e.g.*, *People v. Kraybill*, 14 N.E.3d 1131, 1139 (Ill. App. Ct. 2014)) (State's witness); *Burkett v. Thaler*, 2010 U.S. Dist. LEXIS 83905, at *18–20 n.123 (S.D. Tex. Aug. 16, 2010) (State's witness); *People v. Sutherland*, 860 N.E.2d 178, 220 (Ill. 2006) (State's witness); *State v. Smith*, 807 A.2d 500, 504 (Conn. App. Ct. 2002) (State's witness); *People v. Cunningham*, 773 N.E.2d 682, 688 (Ill. App. Ct. 2002) (State's witness); *Layton v. Johnson*, 2001 U.S. Dist. LEXIS 13976, at *23 (N.D. Tex. Sep. 6, 2001) (State's witness); *State v. Williams*, 1991 Ohio App. LEXIS 3883, at *31 (Ohio Ct. App. Aug. 16, 1991) (State's witness); *Davis v. Commonwealth*, 147 S.W.3d 709, 728 (Ky. 2004) (State's witness).
[5] *State v. Jones*, 681 S.E.2d 580, 583 (S.C. 2009); *see also Frankenfield v. State*, 2008 Tex. App. LEXIS 7920, at *34 (Tex. App. Oct. 16, 2008).

in the passenger and light truck market." Doc. 1-19, PagID 180.  In other words, contrary to

Yezzo's testimony, "similar" does not mean it was "the same as the tire, Triumph 2000," nor

does it mean "it would have originated from the Triumph 2000."  Ex. A-2, Dep. Tr. 24, 25.

Bodziak also criticized Yezzo's procedure, stating, "The only way to opine that a crime

scene tire impression is the same tread design and dimension as a tire or tires on the Oldsmobile

Omega would be to make full circumference known test impressions of a tire of that same design

and tread dimension and to compare it directly to a case of a crime scene impression."  Doc. 1-

19, PagID 180.  This was not done, as Bodziak pointed out: "Instead examiner Yezzo chose to

simply make a visual evaluation and opine that the design was similar."  *Id.*

Regarding the license plate, Bodziak determined:

No evidence could be found by this examiner of any numeral '3' as reported by
Yezzo.  There is insufficient evidence to determine from what portion of the
license tag the numerals '4' and '0' would be from, since no other numerals or
reference areas appear . . . .  [A] distinction could not be made between a license
plate that reads 'MVR043' versus others that have the numerals '04' somewhere
on the plate.

Doc. 1-19, PageID 178.  Yezzo testified that the impression showed it was "similarly placed on

the vehicle as the license plate on [Keith's girlfriend's car]."  Ex. A-2, Dep. Tr. 13.  But Bodziak

found that the photographs of the snow bank "are not consistent with the profile of the front of

the 1982 Oldsmobile in that, on that vehicle, the license tag is mounted fairly flush with the

bumper, thus contact with the license tag to the degree that it pushed snow enough to produce an

impression, would also have produced impressions of the remainder of the bumper . . . .  Instead,

the snow appears to be undisturbed in those areas."  Doc. 1-19, PageID 176.

Bodziak reviewed the evidence and determined that it was insufficient to even determine

that the tire tracks and license plate imprint came from the same car: "[I]t is not possible to

conclude whether the license tag impression and tire impression represent one simultaneous

event or two unrelated and independent events." *Id.* at PageID 180.  He found that there was no

way, without more, to make that determination objectively: "Simply making a visual evaluation

that the license impression was, in fact, made by the same vehicle that left the tire impression,

without any further documentation, prohibits any objective evaluation, either then or now." *Id.*

Bodziak further noted that the photographs of the impressions were taken improperly.

"The significance of not properly recovering impression evidence not only results in the inability

to make positive associations with footwear of suspected persons or tires from their vehicles, but

equally prevents revealing possible differences in those impressions." *Id.* at PageID 181.

Keith filed a habeas petition based on Bodziak's report, faulting trial counsel for not

presenting a defense expert.  Indeed, trial counsel was ineffective in failing to obtain his own

expert to review the evidence concerning the car.

The opportunity for Keith to raise an ineffective assistance of trial counsel claim had

passed,[6] and Keith has not faulted the Defendants for preventing him from raising those claims.

But a claim challenging trial counsel's failure to use an expert is one thing.[7]  A claim regarding

knowledge that the State's forensic witness acted against Keith, in accordance with her own

---

[6]Keith filed his habeas petition in 2013, after the Supreme Court's decisions in *Martinez v. Ryan*,
566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), hoping those cases provided a
gateway to excuse procedurally-defaulted ineffective-assistance-of-counsel claims.  The
Magistrate Judge determined that "As Keith's Third Petition raises claims that either were or
could have been raised in his First Petition, his Third Petition is successive." *Keith v. LaRose*,
2014 U.S. Dist. LEXIS 42121, at *12 (N.D. Ohio Feb. 6, 2014).  The District Judge adopted her
findings and transferred the petition to the Sixth Circuit.  The Sixth Circuit denied Keith's
ineffective assistance of counsel claims, because he could not meet § 2244(b)'s high standards.
[7] *See Harrington v. Richter*, 562 U.S. 86, 89 (2011) (discussing claims of ineffective assistance
of counsel for failure to hire an expert, "There were any number of experts whose insight might
have been useful to the defense.  Counsel is entitled to balance limited resources in accord with
effective trial tactics and strategies.").

biases toward police and against African-Americans, is quite another.  By providing patently erroneous conclusions, Yezzo covered up the truth.

Demonstrating that Yezzo was known for stretching the truth for police officers would have eliminated all credibility from her testimony.  Perhaps even more importantly, however, it would have cast doubt on the credibility of those officers who asked her to stretch the truth.  More than likely, Yezzo would not have been permitted to testify at all.  As then Ohio Attorney General Lee Fisher explained in his affidavit, "Had I known in 1994 what I know now, I would not have permitted Ms. Yezzo to provide testimony against Kevin Keith."  Doc. 1-21, PageID 185.  Had that happened, then, truthful conclusions—like those rendered by Bodziak—would have been presented to the jury.

It is important to note that the allegations about Yezzo were not isolated criticisms from a single disgruntled colleague.  The 1989 memorandum, documenting that Yezzo "will stretch the truth to satisfy a department," was from the Assistant BCI Superintendent to the Superintendent.  Doc. 1-11, PageID 133-134.  In it, the Assistant Superintendent explained that "[t]he feelings and attitudes [about Yezzo] are shared by all of the labs, not merely London."  *Id.* at 135.  It was a "consensus" among BCI analysts that analyst Yezzo's "findings and conclusions regarding evidence may be suspect.  She will stretch the truth to satisfy a department." *Id.* at 134.

By 1989, Yezzo's colleagues believed that she "suffers a severe mental imbalance and needs immediate assistance."  Doc. 1-13, PageID 161. Yezzo was abusive to her co-workers, attempting to physically assault at least two of them.  *Id.* at 155-157 . She used racial slurs ("nigger bitch," "nigger in a woodpile") when addressing an African-American co-worker.  *Id.* at 158, 160.

In 1993, less than a year before she testified against Keith, she was placed on Administrative Leave.  Complaint, ¶¶ 85-89.  A hearing to determine the extent of her suspension

was set for May 26, 1994. *Id.* at ¶ 91. Nevertheless, on May 12, 1994—just two weeks before the hearing—Yezzo provided critical testimony against Keith. *Id.* at ¶ 93. And a jury convicted him, sentencing him to death.

## II.     STANDARD OF REVIEW

For purposes of brevity, Keith adopts and incorporates herein the standard as laid out in Plaintiff's Response in Opposition to Defendants' Motions to Dismiss, filed April 16, 2018. Doc. 27, PageID 437–38.

## III.    ARGUMENT

### A.      Keith's Claims are Timely.

In *Kuhnle Bros., Inc. v. Cty. of Geauga*, the Sixth Circuit explained that the limitations period starts to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." 103 F.3d 516, 520 (6th Cir. 1997). To determine the appropriate date, the court will look at "what event should have alerted the typical lay person to protect his or her rights." *Id.*

Yezzo implies that the triggering event "occurred decades ago, as far back as 1989," and thus Keith is barred by the two-year statute of limitations. Doc. 32, PageID 502. First, Keith was not even indicted and tried until 1994, so he had no reason to know of the injury Yezzo would cause him. The injury is not that Yezzo is, generally, biased to lie for police officers. The injury is that Yezzo covered up evidence that could have helped Keith, and prevented him from filing a non-frivolous claim challenging his conviction. Because Yezzo provided her skewed forensic analysis, the State never had an unbiased expert analyze the evidence, and the truth was concealed. *See* Complaint Ex. 21, p. 3. Yezzo also never disclosed the requests from the police officers that led to her false conclusions.

8

Before learning about the information in Yezzo's personnel file, Keith did not know that Yezzo "wrongfully and intentionally conceal[ed] information crucial to [his] ability to obtain redress through the courts, and do so for the purpose of frustrating that right." *In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 823 (S.D. Ohio 1995). Keith did not learn of any of the information regarding Yezzo's reputation, misconduct, and mental instability until after the Cleveland Plain Dealer ran an article about *another* defendant, James Parsons, on January 8, 2016, and after Keith obtained Yezzo's personnel file from Parsons' counsel in the days immediately following the article. Complaint ¶ 73. While Yezzo is correct that the statute of limitations for § 1983 claims arising in Ohio is two years, *see Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989), the date when the limitations period started to run was January 8, 2016 and the days immediately following. Keith filed his complaint on January 8, 2018, within the two year period.

Finally, it should be noted that "the expiration of a statutory period is not necessarily fatal to a lawsuit" where, as here, the facts support a claim for equitable estoppel. *See Barksdale v. City of Cleveland*, 2006 WL 7077216, at *5 (N.D. Ohio May 5, 2006) ("The doctrine of equitable estoppel (also known as fraudulent concealment) allows a plaintiff to avoid bar of the statute of limitations when a defendant has taken active steps to prevent or deter him from timely filing his complaint."). Yezzo prevented Keith from bringing these claims earlier by concealing the fact that she provided knowingly false testimony, and Keith was diligent in asserting his rights once this information was finally discoverable.

## B.    Keith Has Stated a Plausible Access-to-Courts Claim Against Yezzo.

Yezzo knowingly covered up evidence, preventing Keith from having his day in court. Accordingly, Keith has demonstrated a "backward-looking" access-to-courts claim. *Flagg v.*

9

*City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013). Those claims are proper against officials who "bar[] the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim." *Id.* To plead a such a backward-looking claim, plaintiffs must allege: (1) a non-frivolous underlying claim, (2) obstructive actions by state actors, (3) substantial prejudice to the underlying claim that cannot be remedied by the state court, and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable. *Id.* at 174.

Here, Keith has identified non-frivolous *Brady* and *Youngblood* claims. Demonstrating prejudice "does not require a plaintiff to prove that he would have won his underlying claim in the absence of government obstruction"—he need only show that the claim is non-frivolous. *Flagg*, 715 F.3d at 178–79; *see also Lewis v. Casey*, 518 U.S. 343, 353 (1996) (the plaintiff need only show "that a nonfrivolous legal claim [has] been frustrated or [is] being impeded"); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (the plaintiff need only "identify a 'nonfrivolous,' 'arguable' underlying claim"). Typical examples of prejudice "include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Fitts v. Sicker*, 232 F. App'x 436, 442 (6th Cir. 2007).

As for the "obstructive actions" element, courts have held that

> a constitutional violation of the right of access has occurred when state officials wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled.

*In re Cincinnati Radiation Litig.*, 874 F. Supp. at 823. Indeed, "[s]everal courts have found that a state official's actions in covering-up evidence amounted to a denial of access to the courts." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997); *see also Spurlock v.*

10

*Thompson*, 330 F.3d 791, 801 n.3 (6th Cir. 2003) ("Insofar as the Complaint properly alleges a violation of Plaintiffs' right of access to the courts—a right derived from both the Due Process Clause and the First Amendment—it is clearly established that a violation of the right of access occurs if a party engages in actions that effectively cover-up evidence, thereby rendering a plaintiff's court remedy ineffective.").

At the time police asked Yezzo to test the forensic evidence in Keith's case, they needed Yezzo to corroborate an otherwise weak case against Keith. The police told the public in their post-arrest press conference that "[w]hat we have is some evidence that we have collected that we *hope* will be able to link him to the crimes." Complaint, ¶ 30 (emphasis added). One survivor had already told nurses, her parents, and the police that "Bruce" was the shooter, and had excluded Keith's photo from the lineup. *Id*. at ¶ 26. And, the large black man Bucyrus Estates residents had seen the night of the shooting and initially thought was Keith turned out to be a new tenant with whom they were unfamiliar. *Id*. at ¶ 24. The police needed to link Keith to the scene, and in the course of their investigation, had collected tire tracks and a license plate imprint that they "hope[d]" would do that.

Yezzo's actions—her faulty forensic findings and her failure to ever tell anyone that Corwin asked her to make specific findings—gave the police exactly what they asked for and what the State needed to bolster its floundering case. And the State has relied on these conclusions for decades to deny Keith access to the courts and to justify disregarding strong evidence against a more likely suspect. *Id*. at ¶ 43.

Yezzo insists that Keith's access-to-courts claim must be dismissed because Yezzo has not prevented Keith from "bringing contemplated challenges . . . before the courts." Doc. 32, PageID 507. She further insists that the State is not required to "take affirmative actions to

11

'enable the prisoner to discover grievances, and to litigate effectively once in court.'" *Id.* But Keith's is not a case in which he is requesting a more robust prison law library and legal assistance program, as in *Lewis v. Casey*, 518 U.S. 343, 347–51 (1996); and he is not requesting details concerning the state's lethal injection process, as in *Fears v. Kasich*, 845 F.3d 231, 238 (6th Cir. 2016).  Rather, Yezzo personally *obstructed* Keith's access to courts by first fabricating and then concealing evidence (and giving other Defendants the cover needed to conceal evidence) to which Keith should have been entitled.  Moreover, Keith is not alleging the denial of a "particular form of relief" or that a federal or state law violates his right to access the courts. Doc. 32, PageID 507 (citing *Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649, 660 (1st Cir. 1997)).  To the contrary, Keith has been unable to obtain *any* relief on his underlying claims due to Yezzo's actions.  And it is *Yezzo's actions* in creating untrustworthy key forensic analysis and then concealing evidence at the behest of the police—not any state or federal law—that caused him to lose out on an opportunity to appeal and collaterally attack his conviction.  *See Christopher*, 536 U.S. at 414 (access-to-courts claims may rest on allegations of "the loss of an opportunity to sue" or "the loss of an opportunity to seek some particular order of relief"); *Swekel*, 119 F.3d at 1264 (explaining that a plaintiff can plead an access-to-courts claim by stating that she was "mechanically barred from filing her lawsuit or her suit was dismissed as untimely").  Yezzo's actions constitute a cover-up which continues to deny Keith access to the courts he needs to obtain relief.  Now, Keith faces serious procedural hurdles to litigating his claims on the merits.  *See Fitts*, 232 F. App'x at 442.

Yezzo "cannot seriously contend that a reasonable [analyst] would not know that such actions were inappropriate and performed in violation of an individual's constitutional . . . rights." *Moldowan v. City of Warren*, 578 F.3d 351, 397 (6th Cir. 2009); *see id.* at 399 (holding that

"forensic expert[s] may be subject to suit under § 1983 for deliberately withholding the existence of exculpatory forensic evidence or fabricating forensic evidence").  She fails to even acknowledge the plethora of cases confirming that a governmental actor's attempt to cover-up or conceal evidence can constitute a denial of access to the courts.  *See Swekel*, 119 F.3d at 1262 ("[I]f a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts"); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984) ("This [access-to-courts] constitutional right is lost where, as here, police officials shield from the public and the victim's family key facts which would form the basis of the family's claims for redress"), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005); *Ryland v. Shapiro*, 708 F.2d 967, 969 (5th Cir. 1983) (reversing dismissal of an access-to-courts claim where the prosecutor "concealed . . . fact[s], and prevented a full investigation into [a] murder"); *Wheatt v. City of E. Cleveland*, 2017 WL 5187780, at *10 (N.D. Ohio Nov. 9, 2017) (denying summary judgment on a plaintiff's access-to-courts claim where police refused to release a file containing exculpatory evidence, and the "underlying Brady claim was non-frivolous").  Her arguments aimed at Keith's access-to-courts claim therefore widely miss the mark and should be disregarded by this Court.

### C. *Heck v. Humphrey* Does Not Bar Keith's Claims.

On April 16, 2018, Keith filed an extensive opposition to motions to dismiss filed by Defendants Crall, Crawford County Prosecutor's Office, Lenhart and Cappy, BCI, Corwin, City of Bucyrus, City of Bucyrus Police Department, and DeWine.  Yezzo raises identical *Heck* arguments in her motion to dismiss.  To avoid unnecessarily repeating the explanation regarding *Heck*'s inapplicability here, Keith incorporates by reference the entirety of that legal argument and applies it to Defendant Yezzo.  *See* Doc. 27, PageID 438–47.

13

Specific to *Yezzo*, and as with the other Defendants, a meritorious determination of Keith's claims here would not "necessarily" render his conviction invalid.  With regard to Defendant Yezzo, Keith is challenging the constitutionality of the her actions in: (1) knowingly manipulating her forensic findings to implicate Keith; (2) providing inculpatory forensic conclusions against Keith, when those conclusions were influenced by bias and not based on the evidence; (3) failing to disclose that the police actively sought to alter her conclusions ("hope this will do the trick for us"); (4) concealing from Keith at the time of trial, during his appeals, at the time of clemency proceedings, as well as during the following years that she had information crucial to Keith's ability to obtain redress; and (5) giving the State the ability to rely on her opinions in fighting to uphold Keith's convictions and death sentence throughout the years of his appeals.

Yezzo fails to grapple with why Keith's case is not *Heck*-barred.  Instead, Yezzo claims—as a conclusion without explanation—that Keith's only "alleged injury is his conviction and continued incarceration" and then merely addresses why *Heck* bars § 1983 relief in such cases.  Doc. 32, PageID 505.  But Keith's claim does not assert conviction and incarceration as injury.  Instead, the alleged injury in access-to-courts cases is the "loss of the opportunity to be heard on a non-frivolous petition."  *Sprinkle v. Robinson*, 2017 WL 1079833, at *9 (E.D. Cal. Mar. 22, 2017); *see also Canales-Robles v. Peters*, 270 F. Supp. 3d 1230, 1239 (D. Or. 2017) (the injury is the "lost opportunity to timely file a non-frivolous challenge to his conviction or sentence.").  "Because the plaintiff need only show that the underlying case was nonfrivolous, proof of actual injury does not necessarily imply that plaintiff would have won the underlying case."  *Sprinkle*, 2017 WL 1079833, at *7; *see also Arrellano v. Blahnik*, 2017 WL 3530896, at *4 (S.D. Cal. Aug. 17, 2017) (allowing an access-to-courts claim to proceed in the face of *Heck*

14

arguments).  For these and other reasons stated in Keith's prior opposition, the *Heck* doctrine does not bar Keith's claims.

### D.     Yezzo is Not Entitled to Immunity

For purposes of brevity, Keith adopts and incorporates herein arguments and case law concerning immunity as laid out in Plaintiff's Response in Opposition to Defendants' Motions to Dismiss, filed April 16, 2018.  Doc. 27, PageID 463–68.

Qualified Immunity.  To support her claim of qualified immunity, Yezzo insists there is no clearly established right "that an expert witness turn over his or her work / personnel record before, during, and after every trial where he or she testifies in."  Doc. 32, PageID 509–10.  In so arguing, she reframes the facts and asserts the narrowest possible view of the constitutional violations Keith has suffered, contrary to § 1983 case law.  *See Martin v. City of Broadview Hts.*, 712 F.3d 951, 961 (6th Cir. 2013) ("[I]t defeats the purpose of §1983 to define the right too narrowly."); *Wheatt*, 2017 WL 5187780, at *9 (for a right to be clearly established, there need not be "a case directly on point").  In any event, Keith alleges more than a failure to "turn over" a personnel record; here, Yezzo falsified evidence to "satisfy" the police department.  Doc. 1-11, PageID 134.  "It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury."  *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) (citing *Stemler v. Florence*, 126 F.3d 856, 872 (6th Cir. 1997)).  "[T]his legal norm was clearly established at least as early as April or May of 1990," *Moldowan*, 578 F.3d at 397, well before Yezzo rendered her expert findings in Keith's case.

And Keith's Complaint and attached Exhibits reveal how Yezzo knowingly rendered a faulty opinion.  *See also infra*, Section I.  In response to a police officer's request to find

evidence that would "do the trick" for them, Yezzo fabricated forensic evidence that the state used against Keith at trial and continues to use today to keep him out of court. In the end, Yezzo "cannot seriously contend that a reasonable [investigator] would not know that such actions were inappropriate and performed in violation of an individual's constitutional . . . rights." *Moldowan*, 578 F.3d at 397.

        <u>Absolute Immunity</u>. Additionally, Yezzo does not enjoy absolute immunity for "her role as an expert witness during Keith's trial." Doc. 32, PageID 510. She bears the burden of proving that absolute immunity is justified. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). She cannot meet that burden here.

        The "Supreme Court has carefully circumscribed the doctrine [of absolute immunity] because [it] protects an official from liability even when the official acted with knowledge of the constitutional violation." *Gregory*, 444 F.3d at 738 (citing *Briscoe v. LaHue*, 460 U.S. 325, 345 (1983)). Here, Yezzo requests a broad grant of immunity for her "role" in Keith's trial. Doc. 32, PageID 510. While it is true that witnesses are entitled to "absolute immunity from suit for all testimony provided in judicial proceedings," *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999), Yezzo wrongly seeks to shield the entirety of her conduct.

        The Supreme Court has established a functional test in determining when absolute immunity applies. In *Buckley*, the Court held that an official is entitled to absolute immunity for functions "intimately associated with the judicial phase of the criminal process" versus those that are more "investigative" in nature. *Buckley*, 509 U.S. at 270, 274. The *Buckley* Court "refused to extend absolute immunity to prosecutors accused of fabricating expert evidence when the prosecutors were acting in an investigatory fashion rather than as advocates." *Gregory*, 444 F.3d at 738 (citing *Buckley*, 509 U.S. at 275). The Sixth Circuit has applied the same reasoning to

"expert forensic examiners," finding that those state actors "act in an investigatory fashion when they interpret and document physical evidence." *Moldowan*, 578 F.3d at 397.  Those are the actions that Yezzo took here, so her claim for absolute immunity fails.

That Yezzo testified at Keith's trial does not alter this conclusion.  It has long been recognized that "nontestimonial, pretrial acts do not benefit from absolute immunity, despite any connection these acts might have to later testimony." *Gregory*, 444 F.3d at 739.  In other words, absolute immunity for testimony provided **does not** "relate backwards" to "protect a defendant for any activities he allegedly engaged in prior to taking the witness stand for his testimony." *Id.* at 738 (brackets omitted); *see also Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002) (no immunity where the plaintiff's claims were based on a municipal officer's verbal fabrications as told to a state trooper and to prosecutors, even though the officer later testified consistently with those fabrications).  The reason for this rule is obvious:

> Subsequent testimony cannot insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence. This Court has never endorsed such a self-serving result. Merely because a state actor compounds a constitutional wrong with another wrong which benefits from immunity is no reason to insulate the first constitutional wrong from actions for redress.

*Gregory*, 444 F.3d at 738–39 (internal citations omitted).  Accordingly, Yezzo's acts prior to testifying at Keith's trial—in addition to her failure to disclose these wrongs after his trial—are not protected by absolute immunity.

The cases Yezzo cites in support of her position in fact undercut her argument.  Yezzo cites to *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999), in support of her demand for broad absolute immunity for her "role" in Keith's trial.  But *Spurlock* provides her no refuge.  The *Spurlock* panel "found that efforts to persuade a third-party witness to lie were non-testimonial acts, regardless of the acts' connection to the third-party witness' later testimony." *Gregory*, 444

17

F.3d at 739 (citing *Spurlock*, 167 F.3d at 1002).  The court reiterated that "the simple fact that acts may ultimately lead to witness testimony does not serve to cloak these actions with absolute testimonial immunity."  *Spurlock*, 167 F.3d at 1001.  As in *Spurlock*, Yezzo is "not entitled to absolute immunity" for her "pre/post-testimonial acts" simply "by virtue of being a witness" at Keith's trial.  *Id.*

Indeed, much of Keith's claims concern Yezzo's behavior pretrial, during the investigatory phase, her post-trial silence, and the ramifications of this behavior.  Yezzo fabricated evidence during the investigative phase at the request of police officers.  The State then used this evidence to convict Keith and has used it since then to deny him access to the courts.  Courts consistently deny defendants like Yezzo a broad grant of absolute immunity for such actions.

Additionally, Yezzo is wrong that "[t]his sort of immunity extends to . . . expert reports." Doc. 32, PageID 510.  She cites to *Rodriguez v. City of Cleveland*, 439 Fed. App'x 433, 454 (6th Cir. 2011) for that proposition, but *Rodriguez* is inapposite.  What *Rodriguez* actually says is that witnesses are granted absolute immunity for both formal testimony and "more informal forms of testimony such as *depositions and affidavits*."  *Id.* (emphasis added).  Grants of absolute immunity do not apply to "expert reports" as Yezzo claims, because these are investigative in nature.  Moreover, the plaintiff in *Rodriguez* based his claim "solely on [the defendant's] testimony."  *Id.*  Keith's claims, by contrast, are based on overwhelming evidence of wrongdoing that is not testimonial in nature.  Accordingly, absolute immunity does not shield Yezzo from liability for her wrongful actions here.

## CONCLUSION

For the foregoing reasons, this Court should deny the Defendant's Motion to Dismiss.

Respectfully Submitted,

/s/ James R. Wooley
/s/ Calland M. Ferraro
James R. Wooley (003850)
Calland M. Ferraro (0093439)
Jones Day – Cleveland
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-7345
jrwooley@JonesDay.com
cferraro@JonesDay.com

/s/ Zachary M. Swisher
Zachary M. Swisher (0076288)
Sybert, Rhoad, Lackey Swisher, LLC
153 South Liberty Street
Powell, Ohio 43065
(614) 785-1811
zach@law153group.com

/s/ Rachel Troutman
Rachel Troutman (0076741)
Supervising Attorney, Death Penalty Dep't
Office of the Ohio Public Defender
250 E. Broad Street, Suite 1400
Columbus, Ohio 43215
Rachel.Troutman@OPD.ohio.gov

/s/ James M. Petro
James M. Petro (0022096)
Attorney-at-Law
6573 Marissa Loop #405
Naples, FL 34108
Jimpetro73@gmail.com

*Counsel for Petitioner*

19

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was electronically filed this 13th day of

June, 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.

Respectfully Submitted,

/s/ Rachel Troutman
Rachel Troutman (0076741)
Counsel for Petitioner

20